UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdinoor Hajiabdi, Abdikarim Abdulle, Halima Abdulle, Seynab Abu, Fadumo Adam, Mohamed Adan, Cabdikhadar Axmad, Hassan Egal, Jama Husien, Abdirahman Khalif, Mohamud Mire, Mohamed Mohamed, Sacdi Said, and Abdikarim Mohamed, | File No. 21-cv-268 (ECT/ECW) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| Metropolitan Transport Network, Inc., *d/b/a* MTN; MTN Leasing, LLC; and Tashitaa Tufaa, | |
| Defendants. | |

Stephen W. Cooper and Stacey R. Everson, The Cooper Law Firm, Chartered, Minneapolis, MN, for Plaintiffs.

Sharon Robin Markowitz, Kristin Berger Parker, and Anne Marie Buethe, Stinson LLP, Minneapolis, MN, for Defendants.

Plaintiffs, United States citizens of Somali heritage who are or were employees of Defendant Metropolitan Transportation Network, Inc. ("MTN"), assert numerous claims against MTN, its owner, Tashitaa Tufaa, and an affiliated business organization, MTN Leasing, LLC. Plaintiffs' claims arise under federal and state law and fall into several buckets. There are national-origin discrimination claims, disability discrimination claims, whistleblower claims, wage claims, and tort claims. Defendants have filed a motion to dismiss some of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). ECF

No. 8.  In response to Defendants' motion, Plaintiffs consented to the dismissal of some claims.[1]  Left for adjudication are Plaintiffs' conversion, breach-of-fiduciary-duty, fraud, and unjust-enrichment claims.  These claims will be dismissed because they are not plausibly pleaded.

I[2]

MTN, a corporation with offices in Fridley, Minnesota, contracts with the Minneapolis Public Schools (Special School District No. 1) "and other [Minnesota] schools to provide transportation services for students and other transportation services[.]"  Am. Compl. ¶¶ 4, 32 [ECF No. 6].  MTN "operates a fleet of over 300 vehicles and has more[] than 300 employees."  *Id.* ¶ 8.  Tufaa owns MTN and is "actively involved" in its "operations and decision-making."  *Id.* ¶ 6.  Plaintiffs are current or former employees of MTN who "worked primarily as bus drivers or dispatchers."  *Id.* ¶ 1.  Plaintiffs are United States citizens "of Somali heritage and birth."  *Id.* ¶¶ 2, 3.

In their Amended Complaint, Plaintiffs advance claims in six counts: (1) Plaintiffs allege that MTN discriminated against them "based on their national origin" and assert claims under Title VII and the Minnesota Human Rights Act.  Am. Compl. ¶¶ 76–83.

---

[1]     Plaintiffs consented to the dismissal without prejudice of all claims against MTN Leasing, LLC, and claims against Tufaa for violations of Title VII, the Americans with Disabilities Act, and the Minnesota Human Rights Act.  Pls.' Mem. in Opp'n at 19–20 [ECF No. 21]; Defs.' Reply Mem. at 18 [ECF No. 24].

[2]     In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Amended Complaint.  *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

Though Plaintiffs do not include allegations regarding disability discrimination explicitly in Count 1, the Amended Complaint elsewhere includes such allegations, *see, e.g.*, *id.* ¶¶ 20, 26, 61–62, 64–65, and presumably based on these allegations, Plaintiffs also include in Count 1 a claim under the American with Disabilities Act. *Id.* at 11 (Count 1 heading). (2) In Count 2, Plaintiffs allege that MTN "was entrusted with funds" obtained from the Minneapolis Public Schools "that belonged to Plaintiffs" but "used them for its own purposes." *Id.* ¶¶ 84, 86. Based on these allegations, Plaintiffs assert claims under Minnesota common law for conversion and breach of fiduciary duty. *Id.* at 12 (Count 2 heading). (3) Plaintiffs allege that MTN failed to pay overtime wages in violation of the Fair Labor Standards Act and the Minnesota Fair Labor Standards Act. *Id.* ¶¶ 89–96. (4) Plaintiffs allege that MTN has failed "to promptly and accurately pay wages" to them in violation of the Minnesota Payment of Wages Act, Minn. Stat. § 181.101, *et seq.*, and other unspecified federal and state wage-and-hour laws. Am. Compl. at 13 (Count 4 heading) and ¶¶ 97–101. (5) Plaintiffs allege in Count 5 that "MTN intentionally engaged in a pattern and practice of fraudulent inducements to Plaintiffs to obtain their labor and/or to obtain compensation from third parties for representing that [Plaintiffs] were its employees and ready for work." *Id.* ¶ 102. Based essentially on this allegation, Plaintiffs assert Minnesota common-law claims for fraud and unjust enrichment. *Id.* ¶¶ 102–116. (6) Finally, Plaintiffs allege in Count 6 that they were subjected to adverse treatment because they reported several legal violations to MTN, and they assert "[w]histleblower" claims under unspecified Minnesota common law and statutes. *Id.* at 16 (Count 6 heading) and ¶¶ 117–122. Except for their abandoned discrimination claims against Tufaa, Plaintiffs are

understood to assert each of these claims against MTN and Tufaa.  *See id.* ¶ 7 ("Unless otherwise noted, Defendants . . . will be collectively referred to as Defendant MTN.").

As mentioned, Defendants' motion challenges Plaintiffs' conversion and breach-of-fiduciary-duty claims in Count 2 and the fraud and unjust-enrichment claims in Count 5, so a somewhat more particular description of the allegations underlying these claims is useful.  The conversion and breach-of-fiduciary duty claims in Count 2 both arise out of the same allegations concerning MTN's use of funds from the Minneapolis Public Schools.  Plaintiffs allege that in 2020, after COVID-19 prompted the cancellation of in-person classes, the Minneapolis Public Schools "committed to paying drivers, including Plaintiffs, through the end of the school year." *Id.* ¶ 43.  Though MTN "took the money" from the Minneapolis Public Schools and said it would pay Plaintiffs, MTN "pocketed some intended for Plaintiffs, [] paid Plaintiffs much less than should have been paid[,]" and "used the money for its own purposes." *Id.* ¶¶ 44, 46, 47.  Plaintiffs allege that the Minneapolis Public Schools "entrusted" these funds to MTN for Plaintiffs. *Id.* ¶ 84.[3]

---

[3]    Plaintiffs also allege that MTN obtained funds through the Federal Paycheck Protection Program ("PPP") "to pay those same wages for which they were already being compensated, but had not appropriately paid." Am. Compl. ¶ 29.  Backed by the United States Small Business Administration, PPP is a loan program established during the COVID-19 pandemic and "designed to provide a direct incentive for small businesses to keep their workers on payroll." *Paycheck Protection Program: First Draw PPP Loan*, U.S. Small Business Administration, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan (last visited Aug. 30, 2021).  Though Plaintiffs seem to suggest that MTN acted inappropriately in the way it obtained and used PPP funds, *see* Am. Compl. ¶¶ 29–31, Plaintiffs do not rely on their PPP-related allegations to support their conversion and breach-of-fiduciary-duty claims, *see* Pls.' Mem. in Opp'n at 3 (identifying "exactly what Plaintiffs allege to support Count [2]" and limiting those allegations to MTN's receipt and use of funds from the Minneapolis Public Schools).

It is not clear precisely which of the Amended Complaint's allegations support Count 5's fraud claim.[4]  Plaintiffs allege that MTN made several representations, some to Plaintiffs and others to third parties.  MTN's representations to Plaintiffs include: (a) that it would "correct" underpayments on paychecks, Am. Compl. ¶ 36; (b) that it "could no longer provide" certain "raw data" underlying payroll records, *id.* ¶ 39; and (c) that it would "pay the drivers, including Plaintiffs, but claimed that the [Minneapolis Public Schools] had not paid the funds for the employees[,]" *id.* ¶ 44.  Without identifying particular statements, Plaintiffs also allege that MTN "intentionally engaged in a pattern and practice of fraudulent inducements to Plaintiffs" and "made a series of materially[]false statements to Plaintiffs about their compensation.  *Id.* ¶¶ 102, 103.  Plaintiffs also allege that MTN "continued to represent *to the paying third parties* [*i.e.*, the Minneapolis Public Schools and the federal government] that Plaintiffs continue[d] to work for them, in order to obtain funds, but have not paid those Plaintiffs anything, and have contradicted themselves regarding the status of said Plaintiffs."  *Id.* ¶ 31 (emphasis added); *see also id.* ¶¶ 70–71 (repeating allegation that MTN represented to third parties that Plaintiffs were employees "to continue obtaining funds").

Plaintiffs' explanation of Count 5's unjust enrichment claim suggests it follows from their fraud claim.  Plaintiffs allege: "As a direct result of the fraudulent behavior, Defendant MTN has enjoyed unjust enrichment."  *Id.* ¶ 115.  This claim also seems to

---

4       In their brief in opposition to Defendants' motion, Plaintiffs identify 45 numbered paragraphs from the Amended Complaint that "among others, bear on the issue of fraud." Pls.' Mem. in Opp'n at 9.  Some of the paragraphs Plaintiffs identify have no apparent connection to the fraud claim.  *See, e.g.*, Am. Compl. ¶¶ 61–65.

depend on the same core allegations that support Plaintiffs' conversion and breach-of-fiduciary-duty claims—*i.e.*, that MTN improperly obtained and retained funds from the Minneapolis Public Schools.

II[5]

In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because it challenges only state-law claims, Defendants' motion implicates settled rules regarding a federal court's application of state law. "[F]ederal courts exercising

---

[5] There is subject matter jurisdiction over this case. Plaintiffs assert claims arising under federal law, 28 U.S.C. § 1331, and there is supplemental jurisdiction over Plaintiffs' state-law claims, *id.* § 1367(a). Some of Plaintiffs' federal and state claims arise from identical facts. These include at least Plaintiffs' claims for national-origin discrimination in Count 1 and for unpaid wages in Counts 3 and 4. Though other of Plaintiffs' state-law claims share fewer facts with Plaintiffs' federal claims, there are enough overlapping facts to conclude here that these "'claims are such that [Plaintiffs] would ordinarily be expected to try them all in one judicial proceeding.'" *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

supplemental jurisdiction over state-law claims must apply the substantive law of the forum state." *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 618 (8th Cir. 2015) (citation omitted).  In some cases, this means applying the forum state's choice-of-law rules to determine which state's law governs.  *See Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005).  But here, the Parties agree that Minnesota law governs Plaintiffs' state-law claims, and there is no reason to second-guess the Parties' agreement on this question; almost every fact relevant to Plaintiffs' claims occurred in Minnesota.  *See Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies[.]").  In applying Minnesota law, a federal district court must follow decisions of the Minnesota Supreme Court or, in the absence of binding precedent from that court, "must predict how the Supreme Court of Minnesota would rule, and . . . follow decisions of the [Minnesota Court of Appeals] when they are the best evidence of Minnesota law." *Id.* (quoting *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)).

A

Under Minnesota law, "'[t]he elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest.'" *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008) (quoting *Olson v. Moorhead Country Club,* 568 N.W.2d 871, 872 (Minn. Ct. App. 1997) (internal quotation omitted)); *see DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (defining conversion "as an act of willful interference with personal property, 'done without lawful

justification by which any person entitled thereto is deprived of use and possession'"
(quoting *Larson v. Archer–Daniels–Midland Co.*, 32 N.W.2d 649, 650 (1948))).   "'A
plaintiff's lack of an enforceable interest in the subject property is a complete defense
against conversion.'"   *Noble Sys. Corp.*, 543 F.3d at 986 (quoting *Lassen v. First Bank
Eden Prairie,* 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)).

Plaintiffs' conversion claim is implausible for two primary reasons.  First, Plaintiffs
do not allege facts plausibly showing that they had an enforceable property interest in funds
MTN received from the Minneapolis Public Schools.  Plaintiffs seem to rely on two
allegations to show they had an interest in these funds: first, that the Minneapolis Public
Schools were "committed to paying drivers," and second, that MTN did not use all of the
funds it received from the Minneapolis Public Schools to pay Plaintiffs, but "pocketed
some intended for Plaintiffs[.]"  *See* Am. Compl. ¶¶ 43, 46.  These and related allegations
describe an interest that is not enforceable.  A "commit[ment] to paying drivers" is
aspirational and indefinite.  It says nothing about the legal right of any one driver (or of
any Plaintiff here) to the payment of funds, or to the payment of particular funds or
amounts.  Plaintiffs nowhere allege that any funds or amounts were in any sense
"guaranteed" to drivers, either individually or collectively.  Really, it seems implausible
that a driver's "right to payment" wouldn't depend on many factors—like dates of
employment, hours worked, rate of pay, etc.—and couldn't be determined without
accounting for these facts.  But the Amended Complaint includes no allegations regarding
any of these factors.  The most one might reasonably infer from Plaintiffs' averments is
that the amount of funds MTN received from the Minneapolis Public Schools was to some

degree derived from the amount (or perhaps an estimated amount) of MTN's driver payroll. That is a long way away from saying that Plaintiffs had an enforceable interest in these funds. It is possible to hypothesize facts that would come closer to creating an enforceable right. What if, for example, the Minneapolis Public Schools cut a check payable to each driver and delivered the checks to each driver in care of MTN? But Plaintiffs don't allege anything like that. Finally, it's worth observing that Plaintiffs cite no legal authority establishing their property right to these funds, and they cite no case establishing a property right under like circumstances.

Second, enforceable interest aside, the funds Plaintiffs describe in their Amended Complaint are intangible and thus are not "property" to which the conversion cause of action applies. The Minnesota Court of Appeals has held that "a conversion claim is viable with respect to money only if the money is in a tangible form (such as a particular roll of coins or a particular stack of bills) and is kept separate from other money." *TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 428–29 (Minn. Ct. App. 2017); *see Streambend Props. II, LLC v. Ivy Tower Minneapolis LLC*, No. A18-1488, 2019 WL 2332409, at *8 (Minn. Ct. App. June 3, 2019). This holding jibes with Eighth Circuit's long-held understanding that Minnesota conversion law follows "the general rule . . . that the cause of action only applies to tangible property, or intangible property customarily merged in, or identified with, some document." *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1547 (8th Cir. 1989); *see Advanced Ctrl. Tech., Inc. v. Iversen*, No. 19-cv-1608 (DSD/TNL), 2021 WL 2646858, at *5 (D. Minn. Apr. 8, 2021) (same). The rule of *TCI Business Capital, Inc.* serves sensible and practical interests, as this case demonstrates: It

seems implausible that Plaintiffs would have suffered injury or objected if MTN paid Plaintiffs to their satisfaction with dollars received from some revenue source other than the Minneapolis Public Schools. If that is true, then Plaintiffs cannot realistically complain about not receiving payment from the specific dollars MTN received from the Minneapolis Public Schools. Regardless, Plaintiffs have not plausibly alleged that the funds MTN received from the Minneapolis Public Schools were tangible and "kept separate" in any sense.[6]

B

Plaintiffs' breach-of-fiduciary-duty claim has four elements: "[1] duty, [2] breach, [3] causation, and [4] damages." *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). MTN argues only that Plaintiffs have failed to allege facts plausibly showing that MTN owed Plaintiffs a duty. Under Minnesota law, this is "an issue . . . generally determine[d] as a question of law[.]" *H.B. ex rel. Clark v. Whittemore*, 552 N.W.2d 705, 707 (Minn. 1996).

---

[6]     There are other problems with Plaintiffs' conversion claim. Courts generally hold that a conversion claim cannot be premised on the nonpayment of wages. *See Voris v. Lampert*, 446 P.3d 284, 292–94 & n.6 (Cal. 2019) ("[W]e have found no reasoned state or federal precedential decision holding that a cause of action for conversion will lie based on the ordinary nonpayment of wages."). And in Minnesota, the independent-duty rule has been understood to preclude a conversion claim for wages (or other money) owed under a contract. *See, e.g.*, *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 125–26 (Minn. Ct. App. 2017); *Klucas v. M.H. Graff & Assocs.*, No. 20-cv-762 (SRN/TNL), 2020 WL 6275971, at *3 (D. Minn. Oct. 26, 2020). Though Plaintiffs' conversion claim seems to implicate them, a more thorough application of these rules to the allegations in the Amended Complaint is not necessary in view of Plaintiffs' failure to plausibly allege a property interest.

10

"A fiduciary relationship is characterized by a 'fiduciary' who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence." *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 330–31 (Minn. Ct. App. 2007) (citing *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)). Some relationships are fiduciary per se. "Per se fiduciary relationships include trustee-beneficiary, attorney-client, business partnerships, director-corporation, officer-corporation, and husband-wife." *Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009). Apart from these per se fiduciary relationships, a "de facto" fiduciary relationship may arise from a particular set of facts. *Carlson*, 732 N.W.2d at 330–31. "Where the parties' arrangement is not of a type that has been designated a per se fiduciary relationship, the general rule in Minnesota is that it may be found to constitute a de facto fiduciary relationship only where certain 'special circumstances' are present." *Carlson, Inc. v. Int'l Bus. Machs. Corp.*, No. 10-cv-3410 (JNE/TNL), 2013 WL 6007508, at *6 (D. Minn. Nov. 13, 2013). Several considerations are relevant to determining whether such "special circumstances" exist. These include whether "one party place[d] its trust and confidence in the other[,]" whether "one of the parties enjoyed superior or excessive influence over the other party[,]" whether one party relied on the other party's "superior knowledge[,]" whether there was "[d]isparity in business experience and invited confidence[,]" and "whether the alleged fiduciary knew of the dependent party's ignorance" or lack of understanding regarding the at-issue transaction or transactions. 4 Minn. Prac., *Jury Instr. Guides – Civil* § 23.10 (6th ed. Sept. 2020 Update) (citations omitted); *see also Carlson, Inc.*, 2013 WL 6007508, at *6 (recognizing that special

circumstances establishing a de facto fiduciary relationship may be based on "a wide disparity of experience and knowledge between the parties, uneven access to information and resources, invited confidences, and the surrender of financial control[]"). Though some of these factors may be present, a fiduciary-duty claim ordinarily is defeated if the plaintiff knew or should have known that the defendant's interests were adverse. *Kennedy v. Flo-Tronics, Inc.*, 143 N.W.2d 827, 830 (Minn. 1966); *Carlson, Inc.*, 2013 WL 6007508, at *7; *Swenson*, 764 N.W.2d at 602–03.[7]

The Amended Complaint does not include allegations plausibly establishing that MTN owed Plaintiffs a fiduciary duty. Plaintiffs do not—and could not—argue that their claim implicates a per se fiduciary relationship. This case's circumstances don't come close to fitting any of those categories. Plaintiffs allege a de facto relationship. But importantly, Plaintiffs cite, and research has identified, no case applying Minnesota law to hold that an employer—either generally or with respect to the payment of wages—owed its employees a de facto fiduciary duty. The evident lack of a case reaching that result makes sense. Employees and employers have adverse interests in many areas, and this is especially true regarding compensation. This seemingly dispositive problem aside, the allegations Plaintiffs identify to support the existence of a de facto fiduciary relationship don't. Plaintiffs observe that MTN received funds from the Minneapolis Public Schools

---

[7]  Plaintiffs argue that the law imposes a fiduciary duty "to any situation where somebody assumes a duty regarding another and then breaches it to the detriment of another." Pls.' Mem. in Opp'n at 6. As the above discussion of Minnesota law shows, this assertion is not correct. Indeed, if Plaintiffs' assertion was correct, then every undertaking—contractual or otherwise—would carry a fiduciary duty. That's not the law.

because MTN represented "they would be delivered to [] Plaintiffs[]" but that MTN "used the payments for [its] own purposes." Pls.' Mem. in Opp'n at 5. But these allegations are off point. What MTN represented to the Minneapolis Public Schools, and what it did with the funds, don't say anything about the nature of the relationship between Plaintiffs and MTN. Plaintiffs argue that they trusted MTN to pay them with the Minneapolis Public Schools' funds "at a time that was critical to the health and safety of their families." *Id.* at 6–7. Plaintiffs also say that they "relied upon the superior knowledge that [MTN] possessed in order to obtain these funds." *Id.* at 7. These allegations do not plausibly distinguish Plaintiffs' situation from that of every employee who relies on an employer to earn revenue sufficient to make payroll. The law requires more to show a fiduciary relationship. Plaintiffs also aver that a disparity in business experience and invited confidence "clearly exist[] here." *Id.* But Plaintiffs identify no allegations in the Amended Complaint to support this assertion.

C

Next is Plaintiffs' claim for common law fraud. Am. Compl. ¶¶ 102–116. Under Minnesota law, Plaintiffs must allege facts plausibly establishing five elements: (1) that MTN made a false representation of a material fact susceptible of knowledge; (2) that MTN made the representation with knowledge of its falsity or without knowing whether it was true or false; (3) that MTN made the representation with the intent to induce Plaintiffs to act in reliance on it; (4) that the representation caused Plaintiffs to act in reliance on it; and (5) that Plaintiffs suffered pecuniary damages as a result of that reliance. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009).

In addition to Rule 12(b)(6)'s familiar standards, Defendants' challenge to the factual sufficiency of Plaintiffs' fraud claim implicates the particularity-in-pleading requirement of Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *see Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (same). "The claim must identify who, what, where, when, and how." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). While Rule 9(b) requires particularity in pleading, "a complaint need not be filled with precise detail[.]" *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1110 (D. Minn. 2009). Rather, "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888. "The level of particularity required depends on the nature of a case," *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012), and to determine whether a party has satisfied Rule 9(b), courts look to "the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is

necessary to give notice to the adverse party and enable him to prepare a responsive pleading," *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957) (citation omitted).

The Amended Complaint's allegations do not plausibly establish fraud with the particularity Rule 9(b) requires. Consider first the representations Plaintiffs allege were made to them. Plaintiffs' allegations that "MTN . . . indicated it would correct" underpayments on paychecks, Am. Compl. ¶ 36, and that "MTN . . . told Plaintiffs [it] could no longer provide" certain "raw data" underlying payroll records, *id.* ¶ 39, are quite general. True, Plaintiffs allege that "Tuffa [sic], as well as, [sic] supervisors and managers for Defendant MTN, were directly involved in these conversations and actions." *Id.* ¶ 40. But identifying a group of "involved" individuals does not identify who made these statements. No particular speaker, occasion, time, manner, or other information is provided. The absence of this information appears significant in view of the Amended Complaint's next allegation that "MTN *seldom* corrected" these alleged underpayments. *Id.* ¶ 37 (emphasis added). The rational inference is that MTN corrected some underpayments, meaning that in some instances, a statement that underpayments would be "corrected" was true. Compliance with Rule 9(b) seems especially important in a situation where the same statement may have been true on some occasions and false in others. Plaintiffs' allegation that MTN and Tufaa stated "that they would pay the drivers, including Plaintiffs, but claimed that the [Minneapolis Public Schools] had not paid the funds for the employees[,]" *id.* ¶ 44, exhibits similar deficiencies. Other than Tufaa, Plaintiffs don't allege who made this statement, when the statement was made, or how this statement was communicated. Finally, Plaintiffs' allegation that MTN "intentionally engaged in a pattern

15

and practice of fraudulent inducements to Plaintiffs[,]" *id.* ¶ 102, pleads a legal conclusion that doesn't comply with Rule 8, *see Iqbal*, 556 U.S. at 679, and the allegation that MTN "made a series of materially[]false statements to Plaintiffs about their compensation[,]" *id.* ¶¶ 103, lacks any particularity.[8]

Consider next the statements Plaintiffs allege MTN made to third parties. To recap, Plaintiffs allege that "the payments [MTN received] from two different governmental entities for the same purpose were not disclosed to those governmental entities[,]" *id.* ¶ 30, and that "MTN . . . continued to represent to the paying third parties that Plaintiffs continue[d] to work for them, in order to obtain funds, but have not paid those Plaintiffs anything, and have contradicted themselves regarding the status of said Plaintiffs[,]" *id.* ¶ 31; *see also id.* ¶¶ 70–71 (repeating allegation that MTN represented to third parties that Plaintiffs were employees "to continue obtaining funds"). These allegations are not

---

[8]     Two of the representations Plaintiffs allege were made to them—the statements that MTN "would correct" paycheck underpayments and that MTN "would pay the drivers"—concern future promises. This adds to the Amended Complaint's Rule 9(b) deficiencies. A future promise is generally non-actionable in fraud. *Valspar*, 764 N.W.2d at 368–69. "It is true that a misrepresentation of a present intention c[an] amount to fraud," but it "must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." *Id.* at 369 (citation omitted). Allegations that a defendant did not fulfill a promise alone do not suffice. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585 590–91 (8th Cir. 2018); *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1014 (D. Minn. 2012). The Amended Complaint includes no allegations plausibly showing that MTN or Tufaa promised to pay Plaintiffs with no intention of doing so. The absence of these necessary allegations is another reason to dismiss Plaintiffs' fraud claim. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747–48 (Minn. 2000) (affirming dismissal of complaint "devoid of any specific claim that . . . statements were representations the appellant knew were false or had no intention of fulfilling at the time they were made"); *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (same).

particular.  They do not identify circumstances plausibly suggesting that either the alleged

non-disclosure or representation was false.  They identify no individual responsible for the

non-disclosure or representation.  There are no allegations regarding the timing or form of

the representation.  And there are no allegations establishing Plaintiffs' reliance on the

representation.  There is more.  Plaintiffs allege these facts "on information and belief."

*See id.* ¶¶ 30, 31, 70, 71.  As the Eighth Circuit has explained:

> "Allegations pleaded on information and belief usually do not
> meet Rule 9(b)'s particularity requirement."  *Drobnak v.*
> *Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).  "When the
> facts constituting the fraud are peculiarly within the opposing
> party's knowledge, however, such allegations may be pleaded
> on information and belief."  *Id.* at 783–84.  "If the plaintiff's
> allegations of fraud are . . . based only on information and
> belief, the complaint must set forth the source of the
> information and the reasons for the belief."  *Munro*, 899 F.3d
> at 590.

*Ambassador Press, Inc.*, 949 F.3d at 421.  Here, Plaintiffs do not say whether facts

regarding MTN's statements to third parties are "peculiarly within" MTN's knowledge.  If

they are, the Amended Complaint sets forth neither the source of these allegations nor the

reasons underlying Plaintiffs' belief.  These deficiencies warrant dismissal of Plaintiffs'

fraud claim.[9]

---

[9]    Plaintiffs introduce new allegations in their response brief.  For example, Plaintiffs
say that "[t]he statements regarding COVID-19 pay were all made [1] at the workplace [2]
to the Plaintiffs" and "[3] shortly after [the] Minneapolis Public Schools closed in mid-
March 2020, prior to the end of the school year."  Pls.' Mem. in Opp'n at 14–15.  It is
fundamental that Plaintiffs cannot amend their Amended Complaint by introducing new
allegations in an opposition brief.  *Al-Saadoon v. Barr*, 973 F.3d 794, 804–05 (8th Cir.
2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition
to a motion to dismiss." (citation omitted)).

D

Plaintiffs' unjust-enrichment claim must also comply with Rule 9(b) but, for the same reason discussed in Part C, does not. Rule 9(b)'s particularity-in-pleading requirement extends to claims "grounded in fraud" regardless of label. *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 672–73 (8th Cir. 2012) ("Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." (citation omitted)); *Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 1008 (D. Minn. 2015) ("[B]ecause allegations of fraud underlie the unjust enrichment claim, a heightened pleading standard applies."). Plaintiffs' unjust-enrichment claim is grounded in fraud. It is paired with the fraud claim in Count 5 and hangs on the allegation that "[a]s a direct result of the fraudulent behavior, [] MTN has enjoyed unjust enrichment." Am. Compl. ¶ 115. In other words, Plaintiffs allege that MTN's fraud made its receipt and retention of funds from the Minneapolis Public Schools and "PPP funding" unjust. *Id.* ¶ 113. Plaintiffs include no specific allegations that are unique to their unjust-enrichment claim. So Plaintiffs' failure to satisfy Rule 9(b) with respect to their fraud claim means their unjust-enrichment claim must be dismissed for the same reason.

Lack of particularity aside, Defendants' motion implicates two purely legal issues with respect to the unjust-enrichment claim. The first issue concerns the first element of unjust enrichment under Minnesota law, and specifically whether this element requires that a benefit be conferred on a defendant *by the plaintiff*. Many decisions of the Minnesota

Court of Appeals seem to say "yes," identifying the elements of the cause of action (in one precise form or another) as follows: (1) a benefit be *conferred by the plaintiff on the defendant*; (2) the defendant accepted the benefit; (3) the defendant retained the benefit although retaining it without payment is inequitable. *E.g.*, *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011); *see also* Defs.' Mem. in Supp., App'x. A (citing 21 cases). Several cases from this District describe the first element in this way. *E.g.*, *Dean St. Cap. Advisors, LLC v. Otoka Energy, LLC*, No. 17-cv-1781 (MJD/BRT), 2019 WL 1405910, at *12 (D. Minn. Mar. 28, 2019) ("Minnesota unjust enrichment law requires that the benefit be conferred by the plaintiff."). At the same time, some Minnesota Supreme Court cases omit the "conferred by the plaintiff" language from the cause of action's first element. In *Caldas v. Affordable Granite & Stone, Inc.*, for example, the Minnesota Supreme Court, quoting from an earlier decision, described the elements as follows:

> To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. [U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.

820 N.W.2d 826, 838 (Minn. 2012) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). Descriptions of the cause of action's elements like that in *Caldas* have prompted courts in this District to question whether Minnesota law requires, as an element of an unjust-enrichment claim, that a plaintiff plausibly allege a benefit conferred "directly" by the plaintiff. *E.g.*, *Luckey v. Alside, Inc.*,

245 F. Supp.3d 1080, 1099 n.26 (D. Minn. 2017) (citing, among other cases, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 n.4 (D. Minn. 2014)).

The second issue concerns preemption. "Minnesota courts repeatedly have held that the availability of statutory claims (whether state or federal) will preclude the assertion of an unjust-enrichment or other equitable claim seeking the same relief." *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1132 (D. Minn. 2011) (collecting cases). Among other contexts, this rule applies to bar unjust-enrichment claims seeking wages when "statutory standards for recovery are set by the legislature." *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018 (PJS/RLE), 2007 WL 2780504, at *11–12 (D. Minn. Sept. 24, 2007) (quoting *Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)); *see also Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1071 (D. Minn. 2011). Here, though it is not entirely clear, Plaintiffs' unjust-enrichment allegations suggest that the claim concerns unpaid wages. *See* Am. Compl. ¶¶ 103–05, 110–11. If Plaintiffs seek additional or different relief, it's not discernable from the Amended Complaint what that is (or might be). There are federal and state labor laws that establish standards for recovery of unpaid wages. Plaintiffs assert claims under them. *See id.* ¶¶ 89–101.

Though these legal issues stand in the way of Plaintiffs' ability to plausibly plead an unjust-enrichment claim, it is unnecessary and unwise to resolve them now. The claim will be dismissed because Plaintiffs failed to plead the claim with particularity. If Plaintiffs seek, and are granted, leave to amend to try to remedy the lack of particularity, it is possible

Plaintiffs may add allegations bearing on either or both of these legal issues.  It makes better sense to address these questions if and when that happens.

*

Defendants requested a with-prejudice dismissal of Plaintiffs' conversion, breach-of-fiduciary-duty, fraud, and unjust-enrichment claims.  Defs.' Reply at 19.  Plaintiffs did not weigh in on this issue.  "Federal courts have disagreed to some extent over whether a dismissal under Rule 12(b)(6) is 'normally one with prejudice or without prejudice,'" but district courts "ultimately have discretion to decide between" the two.  *Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1079–80 (D. Minn. 2021) (citation omitted).  "A dismissal with prejudice is typically appropriate when a plaintiff has shown persistent pleading failures despite one or more opportunities to amend, or when the record makes clear that any amendment would be futile."  *Id.* at 1080 (internal quotation marks and citations omitted).  A without-dismissal prejudice may be warranted, however, when claims "might conceivably be repleaded with success."  *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Plaintiffs' conversion and breach-of-fiduciary duty claims will be dismissed with prejudice.  Plaintiffs amended their complaint once already.  Plaintiffs have identified no allegations they might add to address these claims' legal deficiencies.  And it is difficult to envision how these claims might be plausibly repleaded.  Notwithstanding Plaintiffs' previous amendment, the fraud and unjust-enrichment claims are somewhat different.  Their primary deficiency is a lack of particularity.  That is a pleading problem, and it is

conceivable Plaintiffs might be able to cure this deficiency.  For this reason, the fraud and unjust-enrichment claims will be dismissed without prejudice.

### ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Partial Motion to Dismiss the Amended Complaint [ECF No. 8] is **GRANTED** as follows:

1.  All claims in the Amended Complaint against Defendant MTN Leasing, LLC are **DISMISSED without prejudice**.

2.  To the extent it is asserted against Defendant Tashitaa Tufaa, Count One of the Amended Complaint is **DISMISSED without prejudice**.

3.  Count Two of the Amended Complaint is **DISMISSED with prejudice**.

4.  Count Five of the Amended Complaint is **DISMISSED without prejudice.**

Dated:  August 31, 2021                            s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court