UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Abdinoor Hajiabdi, Abdikarim Abdulle, Halima Abdulle, Seynab Abu, Fadumo Adam, Mohamed Adan, Cabdikhadar Axmad, Hassan Egal, Jama Husien, Abdirahman Khalif, Mohamud Mire, Mohamed Mohamed, Sacdi Said, and Abdikarim Mohamed,

   Plaintiffs,

v.

Metropolitan Transport Network, Inc., *d/b/a* MTN; and Tashitaa Tufaa,

   Defendants.

File No. 21-cv-268 (ECT/ECW)

**OPINION AND ORDER**

Stephen W. Cooper and Stacey R. Everson, The Cooper Law Firm Chartered, Minneapolis, MN, for Plaintiffs.

Sharon Robin Markowitz, Kristin Berger Parker, and Anne Marie Buethe, Stinson LLP, Minneapolis, MN, for Defendants.

  Plaintiffs seek leave to file a second amended complaint. ECF No. 31. Plaintiffs filed this motion two weeks after the entry of an order dismissing four claims from their previous complaint. The dismissed claims were for conversion, breach of fiduciary duty, fraud, and unjust enrichment. ECF No. 30; *Hajiabdi v. Metro. Transp. Network, Inc.*, 2021 WL 3885653 (D. Minn. Aug. 31, 2021). Familiarity with that order is presumed. Plaintiffs seek leave to reassert their fraud and unjust enrichment claims, to assert a new civil theft claim, and to add a plaintiff. Plaintiffs' motion will be granted in part and denied in part.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But "plaintiffs do not have an absolute or automatic right to amend." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). Amendment will be denied if a proposed claim is futile. *Id.* An amendment adding a new claim is futile when the claim "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (citation omitted). A new claim therefore must be supported by allegations that "raise a right to relief above the speculative level" and the amended pleading must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I

Plaintiffs seek to re-plead an unjust-enrichment claim. The plausibility of this claim depends on the resolution of two issues raised by Defendants in opposition to Plaintiffs' motion: first, whether Minnesota law requires an unjust-enrichment plaintiff to allege that he (and not a third party) conferred a benefit on a defendant; and second, whether Plaintiffs allege facts plausibly showing that Defendants' retention of the alleged benefit was inequitable.

The better answer to the first question is that Minnesota law does not require an unjust-enrichment plaintiff to allege that he conferred a benefit on the defendant. As Defendants correctly note, many (but not all) Minnesota Court of Appeals decisions

identify the unjust-enrichment cause of action's three elements to include "a benefit [] conferred *by the plaintiff* on the defendant[.]" *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011) (emphasis added); *see* Defs.' Mem. in Supp. at 17–18 and App'x A [ECF No. 10]. *But see, e.g.*, *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007) (describing the first element as "a benefit conferred"). So have several cases from this District. *See* Mem. in Supp. at 18 n.11 and App'x B. The Minnesota Supreme Court, however, has not specified that the plaintiff must have conferred the benefit on the defendant, and its decisions are binding here. Typical is that court's description of the elements in *Caldas v. Affordable Granite & Stone, Inc.*:

> To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay. [U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.

820 N.W.2d 826, 838 (Minn. 2012) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)); *see also Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 494–95 (Minn. 1971) ("Very broadly defined, the [unjust-enrichment] cause of action was described by Mr. Justice Mitchell in *Brand v. Williams*, 29 Minn. 238, 239, 13 N.W.42, as one which 'can be maintained whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over.'"); *Cady v. Bush*, 166 N.W.2d 358, 361 (Minn. 1969) ("[T]he theory of unjust enrichment . . . 'is founded on the principle that no one ought unjustly to

enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff, and under such circumstance that he ought, by the ties of natural justice, to pay over.'") (citation omitted).  To be clear, the Parties have not cited, and research has not identified, a Minnesota Supreme Court case requiring, for purposes of an unjust-enrichment claim, that a benefit have been conferred by a plaintiff.  Plaintiffs' failure to allege that they conferred a benefit on Defendants is thus not fatal to their proposed unjust-enrichment claim.

Plaintiffs allege facts in their proposed Second Amended Complaint plausibly showing that Defendants' retention of the benefit was inequitable.  Plaintiffs allege that the Minneapolis Public Schools paid Defendants funds "solely for the purpose of passing them on to Plaintiffs," Proposed Second Am. Compl. [ECF No. 33-1] ¶ 136, and that "[e]xcept for being entrusted with providing [this] money to Plaintiffs, Defendants would not have received access to [it]," *id.* ¶ 135.  Plaintiffs also allege that Defendants had reason to know the funds were intended for Plaintiffs but nonetheless retained them.  *Id.* ¶¶ 136–40.  Again, Defendants have a point.  Though Plaintiffs allege repeatedly that the law—*i.e.*, "the CARES Act and Minnesota law," *id.* ¶ 124—made these funds Plaintiffs' "like giving money to Western Union or other delivery services for a family member[]" might, *id.* ¶ 136, Plaintiffs have neither cited nor otherwise identified specific "CARES Act" provisions or a source from "Minnesota law" that might accomplish the alleged result. Regardless, Defendants haven't cited authority that requires Plaintiffs to include precise citations to authorities in their proposed pleading, and insisting on that would seem to go

4

beyond Rule 8's notice-pleading standard. Consistent with the obligations imposed by Rule 11, Plaintiffs' counsel will sign the proposed Second Amended Complaint before filing, certifying that these allegations are warranted and have support. That is enough for now.[1]

II

With respect to their fraud claim, Plaintiffs must allege facts plausibly showing that: (1) Defendants made a false representation of a material fact susceptible of knowledge; (2) Defendants made the representation with knowledge of its falsity or without knowing whether it was true or false; (3) Defendants made the representation with the intent to induce Plaintiffs to act in reliance on it; (4) the representation caused Plaintiffs to act in reliance on it; and (5) Plaintiffs suffered pecuniary damages as a result of that reliance. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). Plaintiffs must allege facts plausibly showing these elements with the particularity required by Rule 9(b). *See Metro. Transp. Network, Inc.*, 2021 WL 3885653, at *5.

Plaintiffs' proposed Second Amended Complaint seems to describe essentially three categories of misrepresentations, but none is sufficient. First, Plaintiffs allege that Defendants misrepresented they had not received funds intended for Plaintiffs under the

---

[1] Defendants argue that "Plaintiffs are essentially attempting to turn a deficient third-party-beneficiary breach-of-contract claim into an unjust-enrichment claim." Mem. in Opp'n at 5 [ECF No. 39]. Plaintiffs do not allege the existence of a contract or other facts establishing their unjust-enrichment claim is contractually barred. *See Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1013–14 (D. Minn. 2008) (denying Rule 12(b)(6) dismissal of unjust-enrichment claim when applicability of contracts was not discernible from complaint).

5

CARES Act when, in fact, they had. Plaintiffs allege that on "March 18, 2020, Plaintiffs, as a group," asked Tufaa why they had not been paid any funds that MTN received under the CARES Act. Proposed Second Am. Compl. ¶ 163. Plaintiffs allege that Tufaa responded with "words to the effect" of, "I have no money for you—the Minneapolis Public School District has not given it to us, but if I get it you will get it." *Id.* ¶ 165. At the same meeting, Plaintiffs allege that an unidentified "manager" of MTN "concurred" that MTN had received no CARES Act funds. *Id.* ¶ 168. Plaintiffs did not accept these representations, at least not for very long. "[S]hortly after the meeting," Plaintiffs allege, they confirmed with the Minneapolis Public Schools that MTN had received CARES Act money intended for Plaintiffs. *Id.* ¶¶ 170–73. And sometime between March 20 and March 24, an MTN manager "admitted that [] MTN had received the money when it claimed it had not[.]" *Id.* ¶¶ 174–77.

Plaintiffs do not plausibly allege to have detrimentally relied on Defendants' representations insofar as they concern *whether* MTN had received CARES Act funds. "Actual reliance 'means that the plaintiff took action, resulting in some detriment, that he would not have taken' if the defendant had not made a misrepresentation, or that the plaintiff 'failed, to his detriment, to take action that he would have taken' had the defendant been truthful." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 594 (D. Minn. 2014) (citation omitted). In other words, Plaintiffs "must allege that they *were* harmed by the allegedly fraudulent promise—and they must describe with particularity *how* they were harmed." *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1015 (D. Minn. 2012). Here, Plaintiffs do not allege actual reliance; they identify no

6

detriment resulting from Defendants' representations that MTN had not received CARES Act funds. Plaintiffs allege they discovered the falsity of the representation that MTN had not received CARES Act funds between two and six days after the representation was made, and they allege no facts plausibly showing they suffered a detriment in that relatively brief period.

The second category of misrepresentations alleged in Plaintiffs' proposed Second Amended Complaint concern Defendants' intent to pay Plaintiffs CARES Act funds at some point in the future.

> The law is well settled that a representation of expectation as to future acts or events is not a sufficient ground for the charge of fraud merely because the represented act or event did not take place. Such representations are not treated as assertions of existing facts and amount to nothing more than conjectures of future events. To amount to actionable fraud, a representation must be material as to a past or existing fact and not to a future event.

*Cady*, 166 N.W.2d at 361 (citations omitted). Though a "misrepresentation of a present intention c[an] amount to fraud," "it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." *Valspar*, 764 N.W.2d at 368–69 (citation omitted). Alleging "who made the false promise, when the promise was made, and the general content of the promise" is not enough, and a broken promise alone does not show a defendant's intent to defraud. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 590–91 (8th Cir. 2018).

Plaintiffs do not plausibly allege a fraud claim based on Defendants' representations that they would pay Plaintiffs CARES Act funds at some future date. Plaintiffs rely on

allegations that MTN had received money from the Minneapolis Public Schools when Defendants promised to pay them; Plaintiffs say this shows Defendants "had no intention of distributing the money at all." Proposed Second Am. Compl. ¶¶ 172–73. This allegation does not plausibly show a present intent to defraud. The allegations of Defendants' promises to pay are still quite vague. Plaintiffs do not allege, for instance, that Tufaa made any definite statement. Plaintiffs allege he told them "words to the effect" that he had not received money for them from the Minneapolis Public Schools, but that they would "get it" when he did. *Id.* ¶ 165. An MTN manager later assured Plaintiffs that "the payments would be made in full." *Id.* ¶¶ 177–80. Plaintiffs do not allege that the manager specified which payments would be made in full. Combine this lack of particularity with allegations that Defendants later *did* pay Plaintiffs CARES Act funds. Plaintiffs say that Defendants "made partial payments to [] Plaintiffs for future weeks" but "continu[ed] to keep a portion of the funds that were intended for [them]." *Id.* ¶¶ 183–84. Plaintiffs also allege that Defendants eventually began making the payments "that should have been made from the beginning," but never corrected previous non-payments or partial payments. *Id.* ¶ 186. Because Plaintiffs do not particularly allege what Defendants promised to pay, it's not clear that Defendants failed to fulfill that promise intentionally. The lack of particularity concerning what Defendants promised to pay, combined with allegations that they *did* pay, means Plaintiffs have not alleged a present intent to defraud with particularity. *See Butler v. ATS Inc.*, No. 20-cv-1631 (PJS/LIB), 2021 WL 1382378, at *16–17 (D. Minn. Apr. 13, 2021); *see also Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423

(8th Cir. 2020) (plaintiff's allegations "only indicate[d] its experience did not align with its expectations").

Third, Plaintiffs' proposed fraud claim rests on representations Defendants made to third parties. Plaintiffs allege that MTN misrepresented the number of employees it had and the number of hours those employees worked to unidentified "governmental entities"; Plaintiffs say these misrepresentations allowed Defendants to receive extra CARES Act funds from the Minneapolis Public Schools. Proposed Second Am. Compl. ¶¶ 190–94, 200. The proposed Second Amended Complaint does not provide the "who, what, where, when, and how" of these representations and therefore fails to meet Rule 9(b)'s particularity standard. Plaintiffs also do not plausibly allege essential elements of fraud as to the third-party representations. Plaintiffs allege neither that Defendants intended Plaintiffs to rely on these representations nor facts plausibly showing that Plaintiffs relied on them. *See Willis v. Centennial Mortg. & Funding, Inc.*, No. 03-cv-3641(RHK/AJB), 2004 WL 229076, at *6 (D. Minn. Feb. 2, 2004).

III

Plaintiffs seek to add a claim for civil theft under Minn. Stat. § 604.14. In the Proposed Second Amended Complaint, Plaintiffs allege that Defendants violated § 604.14 by receiving CARES Act funds from the Minneapolis Public Schools and "never transferr[ing] significant portions" of those funds to Plaintiffs. *See* Proposed Second Am. Compl. ¶¶ 149–57. Defendants argue that Plaintiffs' civil theft claim is futile because Plaintiffs do not plausibly allege to have "owned" the funds or that Defendants "stole" them. Mem. in Opp'n at 13–15.

9

Under § 604.14, subd. 1, "a person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages . . . ." The term "steal"—which is undefined in the statute—requires "that a person wrongfully and surreptitiously take[] another person's property for the purpose of keeping it or using it." *TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 431 (Minn. Ct. App. 2017). Thus, "for a person to steal something, there must be some initial wrongful act in taking possession of the property." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 126 (Minn. Ct. App. 2017), *aff'd*, 913 N.W.2d 687 (Minn. 2018); *accord Klucas v. M.H. Graff & Assocs.*, No. 20-cv-0762 (SRN/TNL), 2020 WL 6275971, at *3–4 (D. Minn. Oct. 26, 2020).

Plaintiffs do not plausibly allege that Defendants committed an initial wrongful act in taking possession of the funds. In the proposed Second Amended Complaint, Plaintiffs allege that the Minneapolis Public Schools made payments to Defendants "pursuant to the CARES Act and Minnesota law." Proposed Second Am. Compl. ¶ 124. In other words, Defendants lawfully received those funds, and they "never left Defendants' possession." *Klucas*, 2020 WL 6275971, at *4; *Staffing Specifix, Inc.*, 896 N.W.2d at 126. Plaintiffs rely on two cases for the proposition that a party commits civil theft by "[k]eeping and using another's property after being asked for its return." Mem. in Supp. at 5; *see Krawczyk v. Aberle*, A20-1401, 2021 WL 3136459 (Minn. Ct. App. July 26, 2021); *Maxim Def. Indus., LLC v. Kunsky*, No. 19-cv-1225 (PAM/LIB), 2019 WL 5079984 (D. Minn. Oct. 10, 2019). If a party may "steal" property by refusing to return it, the cases Plaintiffs cite are distinguishable. In them, the plaintiffs gave personal property to a defendant who ignored

10

later requests for the property to be returned. *See Krawczyk*, 2021 WL 3136459, at * 8 (plaintiff "gave the money in question to [the defendant] for him to manage"); *Kunsky*, 2019 WL 5079984, at *4 (defendant retained employer's credit card and office equipment after being terminated). Here, Plaintiffs never possessed the money they seek to recover. Finally, Plaintiffs cite no authority supporting the proposition that alleging some legal or equitable right to payment of an intangible sum may equate to a taking of personal property.

IV

Plaintiffs seek to add a new plaintiff, Said Mohamed Mohamud, who they say is "similarly-situated" because he "worked at [MTN] as a bus driver during the same time as . . . Plaintiffs and was subjected to the same treatment by Defendants." Mem. in Supp. at 1. Defendants oppose the addition of Mohamud with respect to Plaintiffs' claims under Title VII, the MHRA, and the ADA on futility grounds. Mem. in Opp'n at 16–17. Defendants have submitted sworn testimony from MTN's general manager to show that Mohamud has not filed an EEOC charge, Carter Decl. ¶ 3 [ECF No. 40], a fact that, if true, would defeat any Title VII or ADA claim Mohamud might bring. *See* 42 U.S.C. §§ 2000e-5, 12117(a); *accord Shannon v. Ford Motor Co.*, 72 F.3d 678, 684–86 (8th Cir. 1996); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005). MTN's general manager also attests that Mohamud's employment with MTN terminated on July 1, 2020. Carter Decl. ¶ 2. If true, this fact impacts accrual of Mohamud's claims and might bar as untimely any claims he could assert under Title VII or the MHRA. *See* 42 U.S.C. § 2000e-5(e)(1); Minn. Stat. § 363A.28, subd. 3. *But see Plubell v. Merck & Co.*, 434 F.3d

11

1070, 1072 (8th Cir. 2006) (explaining that a newly added plaintiff's claims may "relate back" under Fed. R. Civ. P. 15(c)).

Defendants' futility evidence will be disregarded at this stage. Futility analysis occurs under Rule 12(b)(6)'s standards, so a court "generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted); *see Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068–69 (8th Cir. 2004) (considering materials "embraced by" proposed amended pleading). Testimony in an affidavit or declaration that contradicts allegations in a complaint should generally be disregarded. *See, e.g.*, *Bhd. Mut. Ins. Co. v. ADT LLC*, 978 F. Supp. 2d 1001, 1003 (D. Minn. 2013). Here, the proposed Second Amended Complaint alleges that "Plaintiffs timely filed charges with the Minnesota Department of Human Rights, which were cross-filed with the EEOC," and that "Plaintiffs have obtained a Right to Sue Letter for the EEOC charges." Proposed Second Am. Compl. ¶¶ 22, 25. This allegation must be accepted as true.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiffs' Motion to Amend Their Amended Complaint [ECF No. 31] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. On or before November 15, 2021, Plaintiffs may file a Second Amended Complaint that includes the unjust-enrichment claim and supporting allegations set out in

Plaintiffs' proposed Second Amended Complaint [ECF No. 33-1 ¶¶ 123–148], and that adds Said Mohamed Mohamud as a plaintiff.

    2.    The motion is denied in all other respects.

Dated: November 8, 2021                              s/ Eric C. Tostrud
                                                                       Eric C. Tostrud
                                                                       United States District Court